AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

### for the

### District of Delaware

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) ) | Case No.  23-517M |
| A Black iPhone Currently Stored at Homeland Security Investigation's Office in Wilmington, Delaware | ) ) ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein.

located in the _____ District of _____ Delaware _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 922(g)(1) | Possession of a firearm by a felon |
| 21 U.S.C. 841(a)(1), (b)(1)(C) | Possession with intent to distribute a controlled substance |

The application is based on these facts:

See attached affidavit.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Marqui Brockenbrough*
_____
Applicant's signature

Marqui Brockenbrough, SA, HSI
_____
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means)*.

Date: _____ 12/12/2023 _____

_____
Judge's signature

City and state:  Wilmington, Delaware

The Hon. Sherry R. Fallon, U.S. Magistrate Judge
_____
Printed name and title

| Print | Save As... | Attach | Reset |
|---|---|---|---|

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Marqui Brockenbrough, a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations ("HSI"), being duly sworn, depose and state as follows:

## INTRODUCTION AND AFFIANT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search a black iPhone ("TARGET DEVICE"), that is currently stored at HSI's office in Wilmington, Delaware.  The TARGET DEVICE is further described in Attachment A.

2.      I am a Special Agent with HSI and have been so employed since 2021.  During my time with HSI, I have participated in multiple enforcement operations including surveillance, search warrants, and arrest warrants.  I have received over 800 hours of training at the Federal Law Enforcement Training Center, to include training in narcotics, illicit narcotics trafficking, immigration violations, financial crimes, and human trafficking/smuggling.  Prior to joining HSI, I was employed as an Officer with United States Customs and Border Protection ("CBP").  As a CBP Officer, I conducted various enforcement operations to interdict narcotics and other contraband in the airport and maritime environment, as well as counter proliferation operations in the air cargo environment.  I graduated with honors and received a Bachelor of Science Degree from Champlain College in the field of Computer Forensics and Digital Investigations.

3.      As a federal agent, I am authorized to investigate violations of laws of the United States.  I am a law enforcement officer with the authority to execute warrants issued under the authority of the United States.

4.      There is probable cause to believe that George Griffin III ("GRIFFIN") has violated

1

18 U.S.C. § 922(g)(1) (Possession of a Firearm by a Felon) and 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Possession With Intent to Distribute a Controlled Substance) (collectively, the "TARGET OFFENSES"). GRIFFIN has been indicted on one count of possession with intent to distribute cocaine, one count of possession with intent to distribute methamphetamine, and one count of possession of four firearms by a felon. GRIFFIN is scheduled to go to trial on January 8, 2024.

5.       The TARGET DEVICE was located today, December 12, 2023. There is probable cause to believe that the TARGET DEVICE contains evidence, fruits, or instrumentalities of the TARGET OFFENSES. Specifically, there is probable cause that the TARGET DEVICE was one of several phones GRIFFIN used to coordinate drug transactions. There is also probable cause that the TARGET DEVICE was used to communicate with a man named Frank White ("WHITE"), who investigators now believe was unwittingly storing guns and drugs for GRIFFIN at WHITE's apartment. Finally, there is probable cause that the TARGET DEVICE will contain location information that will show GRIFFIN made numerous trips to WHITE's apartment during the relevant time period.

6.       The statements contained in this affidavit are based on information and reports provided by federal, state, and local law enforcement agents; written reports about this and other investigations that I have received, directly or indirectly, from other law enforcement agents; the results of physical surveillance conducted by law enforcement agents; independent investigation and analysis by law enforcement agents and analysts; and my experience, training, and background as a Special Agent.

7.       Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have

set forth only the facts I believe are necessary to establish probable cause to believe that GRIFFIN

has committed the TARGET OFFENSES and that evidence, fruits, and instrumentalities of those

offenses will be found on the TARGET DEVICE.

## JURISDICTION

8.      This Court has jurisdiction to issue the requested warrant because it is "a court of

competent jurisdiction" as defined by 18 U.S.C. § 2711. *See* 18 U.S.C. § 2703(a), (b)(1)(A), &

(c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction

over the offenses being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

### A.  Initiation of Investigation

9.      In August of 2022, HSI initiated a joint criminal investigation in coordination with

the Maryland State Police ("MSP"). During the course of the investigation, several narcotics

distributors were identified, including GRIFFIN. GRIFFIN, who resides in Maryland, had been

identified by MSP as a source of supply for cocaine and crystal methamphetamine in Cecil County,

Maryland.

10.     MSP's investigation revealed that GRIFFIN used a number of cellular telephones

to communicate with drug associates, including an informant. GRIFFIN changed phone numbers

on a regular basis during MSP's investigation. One of the numbers GRIFFIN used was ███████

███

11.     GRIFFIN has a criminal history of drug trafficking in Maryland and Delaware. In

2008, 2009 and again in 2013, GRIFFIN was convicted for possession with intent to deliver

controlled substances.

12.     During the investigation, law enforcement developed probable cause that GRIFFIN

3

utilized his vehicle to facilitate drug trafficking.  As such, an HSI Task Force Officer ("TFO")

obtained a State of Delaware Search and Seizure Warrant through the Justice of the Peace Court

11 for a blue 2006 Volkswagen SUV (VIN: WVGZG77L66D043590) ("Volkswagen") registered

to GRIFFIN.

### B.  Arrest of GRIFFIN

13.     On September 9, 2022, MSP contacted HSI and advised that GRIFFIN was

traveling to Delaware from Cecil County, Maryland, in the Volkswagen.  Prior intelligence,

coupled with physical surveillance conducted on GRIFFIN, suggested that GRIFFIN would be

traveling to ██████████████████████████████████████████████.  During this

investigation, agents confirmed that the aforementioned apartment is occupied by WHITE.  Agents

responded to the area of ████████████████ to establish surveillance.

14.     Agents observed the Volkswagen, driven by GRIFFIN, enter the ████████████

apartment complex and observed GRIFFIN park and enter ██████████████.  He and WHITE

ultimately left ████████████ and drove away in the Volkswagen, with GRIFFIN in the driver's

seat and WHITE in the passenger seat.

15.     A few hours later, at around 3:30 p.m., GRIFFIN (driving) and WHITE (passenger)

arrived back at the ██████████ apartment complex and parked in front of WHITE's apartment

building.  WHITE went into the apartment building and GRIFFIN stayed in the Volkswagen.

WHITE came out of the apartment a short time later and placed an unknown object in the passenger

side of the Volkswagen.  GRIFFIN then got out of the Volkswagen and opened the rear passenger

side door; he appeared to be manipulating an unknown object in the vehicle.   WHITE appeared

to be replacing or fixing the passenger side mirror.

16.     GRIFFIN was then observed opening the hood of the vehicle and manipulating an

object in the passenger side area of the engine compartment. WHITE was not observed working within the engine compartment. WHITE then walked away and GRIFFIN got in the vehicle and began to drive away. Agents pulled the Volkswagen over and executed the search warrant. GRIFFIN was the operator and sole occupant of the vehicle.

17.    Agents conducted a search of the Volkswagen. In the engine compartment, they located and recovered a black, knotted sock. The sock was concealed and wedged between the air box and the inside of the passenger-side front fender. The sock contained approximately 125.9 grams of cocaine in a clear knotted plastic bag. Inside the passenger compartment of the vehicle, agents found an iPhone 13.

18.    WHITE was contacted outside of his apartment and informed agents that GRIFFIN had stored a trunk, a crate, and a cardboard box in his apartment. Those items were recovered and searched, with WHITE's consent. The items contained approximately 726.9 grams of crystal methamphetamine and four firearms.

19.    After the search of the Volkswagen on the scene, the vehicle was seized by the Newport Police Department and taken to a secure impound lot where it has remained ever since.

### C.  Other Phones and Searches Thereof

20.    As previously stated, an iPhone 13 (the "FIRST iPHONE") was found in the Volkswagen during the initial search on the scene.

21.    On November 10, 2022, a search and seizure warrant for the FIRST iPHONE was signed by a U.S. Magistrate Judge in the District of Delaware. At the time, agents believed the FIRST iPHONE was the only phone in GRIFFIN's possession at the time of his arrest.

22.    A review of the data extracted from the FIRST iPHONE revealed no communication with WHITE or any communications coordinating drug transactions. WHITE had

informed agents that GRIFFIN visited his apartment periodically and generally called or texted before he did so.

23.      Because of the lack of relevant communications on the FIRST iPHONE, including any communications with WHITE from the day of September 9, 2022 (when agents knew GRIFFIN had visited WHITE's apartment), agents came to believe that there may have been an additional phone in GRIFFIN's vehicle that was not found during the execution of the search warrant.

24.      On November 23, 2022, agents conducted a second search of the Volkswagen.  A second phone, a Nokia (the "NOKIA PHONE"), was found in the in the glove compartment of the vehicle.

25.      On March 15, 2023, a search and seizure warrant for the NOKIA PHONE was signed by a U.S. Magistrate Judge in the District of Delaware.

26.      A review of the data extracted from the NOKIA PHONE also revealed no communications with WHITE from the day of September 9, 2022, and only one communication that appeared to be related to a drug transaction.  Agents therefore came to believe that there was yet another phone in GRIFFIN's vehicle.

27.      Today, December 12, 2023, agents conducted another search of GRIFFIN's vehicle.  The search revealed the TARGET DEVICE, which was tucked in the crevice between the driver seat and the center console.

**D.  Identification of the TARGET DEVICE**

28.      During the early stages of the investigation, MSP identified various phone numbers used by GRIFFIN to coordinate drug transactions, including transactions with an MSP informant. One of the numbers identified was ▮▮▮▮▮▮▮▮▮.  In October 2022, a subpoena was sent to

AT&T requesting subscriber information, call history records, and other identifying information related to that phone number. AT&T responded by providing the requested information, including the type of device associated with the number: an Apple iPhone 11. The TARGET DEVICE appears to be an Apple iPhone 11.

29.     Further, agents believe that the TARGET DEVICE belongs to GRIFFIN because he was the sole occupant of the vehicle in which the TARGET DEVICE was found (when it was pulled over), and that vehicle is registered to him. Based on my experience, people tend to set up meetings via phone, and agents believe that GRIFFIN used the TARGET DEVICE to coordinate visits to WHITE's apartment (including the visit on the day of his arrest), as well as coordinate drug transactions.

30.     Moreover, GRIFFIN's location in the weeks before his arrest is important evidence of whether the drugs and guns at WHITE's apartment were possessed by GRIFFIN. I am aware that cellular devices store certain location information, and that people often communicate about their location or their plans to visit certain places using their cellular devices. Accordingly, location evidence—and communications with WHITE and others—about GRIFFIN's plans to travel to WHITE's apartment would be relevant evidence relating to the TARGET OFFENSES.

## FORENSIC EVIDENCE

31.     As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how a cellular telephone was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the TARGET DEVICE because:

a.      Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.      Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.      A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.      The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a cellular telephone is evidence may depend on other information stored on the cellular telephone and the application of knowledge about how a cellular telephone behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.      Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

f.       I know that when an individual uses an electronic device to communicate with co-conspirators or otherwise further an offense, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage

8

medium for evidence of the crime. The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic device is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that an electronic device used to commit a crime of this type may contain data that is evidence of how the electronic device was used, data that was sent or received, and other records that indicate the nature of the offense.

g.  A thorough search of digital media, such as the TARGET DEVICE, for evidence or instrumentalities of a crime commonly requires a qualified expert to conduct the search in a laboratory or other controlled environment. This is true for the following reason—searching digital media requires the use of precise, scientific procedures which are designed to maintain the integrity of the evidence and to recover hidden, erased, compressed, encrypted, or password-protected data. Since such data is particularly vulnerable to inadvertent or intentional modification or destruction, a controlled environment, such as a law enforcement laboratory, is essential in conducting a complete and accurate analysis of the equipment and storage devices from which the data will be extracted.

h.  Searching for the evidence described in Attachment B may require a range of data analysis techniques. In some cases, agents and computer analysts may be able to conduct carefully targeted searches that can locate evidence without requiring a time-consuming manual search through unrelated materials that may be commingled with criminal evidence. In other cases, however, such techniques may not yield the evidence described in the warrant. Criminals can mislabel or hide information, encode communications to avoid using key words, attempt to delete information to evade

9

detection, or take other steps designed to frustrate law enforcement searches for information. These steps may require agents and law enforcement or other analysts with appropriate expertise to conduct more extensive searches, such as scanning storage areas unrelated to things described in Attachment B or perusing all stored information briefly to determine whether it falls within the scope of the warrant. Considering these difficulties, HSI intends to use whatever data analysis techniques appear necessary to locate and retrieve the evidence described in Attachment B.

32.    The TARGET DEVICE is currently located at HSI's office in Wilmington, Delaware. In my training and experience, I know that the TARGET DEVICE has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the TARGET DEVICE first came into the possession of law enforcement earlier today.

33.    **Nature of examination**: Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

34.    **Manner of execution**: Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

35.    In summary, there is probable cause to believe that GRIFFIN has committed the TARGET OFFENSES and that the TARGET DEVICE contains evidence, fruits, and

instrumentalities of those offenses.   In particular, there is probable cause that the TARGET

DEVICE belongs to GRIFFIN: it was found in his vehicle, and it matches the device type (an

iPhone 11) associated with a phone number Griffin is known to have used to coordinate drug

transactions.  Further, there is probable cause that the TARGET DEVICE contains evidence, fruits,

and instrumentalities of GRIFFIN's crimes: it was used to coordinate drug transactions with the

MSP's informant, and it was likely also used to coordinate visits to WHITE's apartment, including

the visit on the day of GRIFFIN's arrest.  I therefore respectfully request that a search warrant be

issued authorizing a search of the TARGET DEVICE and a seizure of any items described in

Attachment B.


*Marqui Brockenbrough*
Special Agent Marqui Brockenbrough
Homeland Security Investigations


Sworn to telephonically in accordance with Fed. R. Crim. P. 4.1 before me this **12th** day of
December 2023.

The Honorable Sherry R. Fallon
United States Magistrate Judge

11

## ATTACHMENT A

## Property To Be Searched

This warrant applies to information associated with:

A black iPhone, currently located at HSI's office in Wilmington, Delaware, seized today, December 12, 2023 (the "TARGET DEVICE").

 

**ATTACHMENT B**

**Property to be Seized**

All records on the TARGET DEVICE that relate to violations of 18 U.S.C. § 922(g)(1) (Possession of a Firearm by a Felon) and 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Possession With Intent to Distribute a Controlled Substance) (collectively, the "TARGET OFFENSES") committed by George Griffin III ("GRIFFIN") between August 1, 2022, at September 10, 2022, including:

1.      lists of customers and related identifying information;

2.      types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

3.      any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

4.      any information recording GRIFFIN's schedule or travel, including travel ███ ███████████████████████████████████████, which was rented by Frank White ("WHITE");

5.      any communications between GRIFFIN and WHITE about GRIFFIN traveling to WHITE's apartment;

6.      all bank records, checks, credit card bills, account information, and other financial records;

7.      evidence of user attribution showing who used or owned the TARGET DEVICE at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

8.      any electronic calendars, notes, task lists, or other information relating to any person's whereabouts or activities relevant to violations of the TARGET

13

OFFENSES;

9.      images, pictures, photographs, videos, or other visual depictions sent or received

by the TARGET DEVICE regardless of the underlying program used to create,

store, send, or receive such depictions relating to violations of the TARGET

OFFENSES:

10.     GPS data showing the location and movement of the TARGET DEVICE;

11.     the content of any and all text messages or instant messages sent or received by

the TARGET DEVICE regardless of the underlying program used to send and

receive those messages relating to the TARGET OFFENSES and/or relating to

the movements or location of the user of TARGET DEVICE.

As used above, the terms "records" and "information" include all manner of evidence in

whatever form and by whatever means they may have been created or stored, including any form

of computer or electronic storage (such as flash memory or other media that can store data) and

any photographic form.